Davis, J.,
delivered the opinion of the court:
For the third time this case is before us. It was first transmitted to this court by the Committee on War Claims of the House of Representatives in accordance with the provisions of the act of May 3, 1883, known as the Bowman Act (22 Stat. L., 485), and was. dismissed for want of jurisdiction for this reason: “By the authority of section 1059 of the Revised Statutes, taking the facts as stated in the petition to be true (which, however, the Government controverts), the claimant might have brought his action in this court at any time within six years after the claim accrued. This he failed to do.” After-wards the claim was transmitted here by the Secretary of the Treasury under the provisions of section 1063 of the Revised Statutes; it was again dismissed for want of jurisdiction, as barred by the statute of limitations, and upon appeal this decision was affirmed by the Supreme Court (123 U. S. R., 227). Now the case is before us by virtue of the following special act of Congress:
"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the claim of John Finn, of Saint Louis, Missouri, successor to the firm of John Finn and Company, for the value of twenty-four horses and seventy-eight mules, be, and the same is hereby, referred to the Court of Claims, with jurisdiction to hear, de *442 termine, and allow the same; and if it shall appear to the satisfaction of the said court that the said horses and mules were duly inspected and accepted as suitable for the service for which they were intended by an officer of the United States, under the regulations, practice or custom in force m and observed by the quartermaster’s department at Saint Louis, Missouri, in the purchase of horses and mules for the Government at the time the said claim originated, and that the said horses and mules thereby became the property of the United States, the court shall render judgment for the agreed price of said horses and mules: Provided, That said court shall hear and determine said claim, notwithstanding the bar of any statute of limitation to the contrary: And provided further, That all the testimony taken in Congressional .Case number one hundred and twenty-seven, and also in case number fifteen thousand two hundred and twenty-three, upon the subject of this claim, now on file in the office of the clerk of the Court of Claims, may be used and read in evidence upon the hearing and trial of the claim herein mentioned; subject, however, to the objections of either party as to its competency, relevancy, and materiality.
“Approved, February 28, 1891.”
It is urged by the defendants that the horses and mules alleged to have been purchased by the Government must have been inspected by “an officer of'the United States;” that they were not in fact inspected by “ an officer,” but by an individual holding no official position, and therefore the claim can not take the benefit of this statute.
We think that the construction thus sought to be attached to the act is too narrow. The statute prescribes that the stock shall have been inspected and accepted “ by an officer of the United States,” but it also states how this inspection and acceptance shall have been made; that is, under the “regulations, practice, or custom in force in and observed by the quartermaster’s department at St. Louis, Mo., in the purchase of horses and mules for the Government at the time said claim originated.” This senteuce in the act should be read as a whole, without separating from it the words “ by an officer of the United States ” and there stop ping; the following- and qualifying words contained in the same sentence should also be considered and given force, and they must be understood to mean, what to us the sentence seems upon its face most clearly and naturally to mean, that the stock shall have been duly inspected by an officer who made the inspection, not necessarily in person, but in the manner then observed *443 by the quartermaster’s department in St. Louis. It must be assumed that Congress, when this act was passed, were familiar with the facts set up by plaintiff as sustaining his contention; they knew that he did not allege that a Government officer in person inspected his horses and mules; they knew that such inspections were during the war made by subordinate agents, and that such a course was then a necessity. It can never be assumed that the legislature do a vaiu thing, and such would have been the passage of this private act were the interpretation attached to it for which defendants contend.
It is also urged that the horses and mules were not so accepted as “ to become the property of the United States; ” that they should have been so accepted is a clear condition of relief under the act, to be settled only by reference to the findings of fact, from which we must learn whether they “ were duly inspected and accepted as suitable for the service for which they were intended by an officer of the United States” in the manner prescribed by the regulations then in force or found in the practice or custom then observed in St. Louis; and, further, whether the stock was so inspected and accepted that it “ became the property of the- United States.”
During the period covered by this action it was the policy of the quartermaster’s department in St. Louis to purchase horses and mules iii Missouri as far as possible beyond the military lines, that thus the stock might be drawn from the reach of the enemy. In carrying out this policy, which involved risk, it was the practice and custom (of which plaintiff had knowledge) for the principal inspector to contract from time to time with individuals to go into the country, there to purchase horses and mules on their own account, but' upon the understanding that the Government was to take the animals if they passed inspection. When an adequate amount of stock was collected at any point application was made by the contractor for inspection, when some deputy appointed by the chief inspector for the purpose was sent to inspect and accept the animals. It was not always convenient for these inspectors to carry branding irons and the stock accepted was not always branded, but stock so inspected and Accepted by the subordinates was regarded as becoming thereupon and thejreby the property of the United States, and payment was made upon this understanding. The action of the subordinate inspector was regarded by the quartermaster’s department, *444 the contractor, and subcontractors as binding upon the Government, and upon his acceptance control was relinquished over the stock, which was forwarded at Government risk to the general depot at St. Louis.
S.uch was the practice and custom approved by the quartermaster, and in accordance with which the parties acted in this instance. The findings show that Finn & Co. (whose successor the plaintiff is) agreed informally with the quartermaster to buy horses and mules in Missouri, deliverable in Sedalia, for $153.70 each; later they notified the quartermaster that they had collected horses and mules at that place and requested that an inspector be sent to inspect and receive them. The demand for stock being urgent,' a deputy was sent to Sedalia by the chief inspector; this deputy in-' spected and accepted thirty-two horses and ninety-four mules, which he branded with a private mark for identification, as he had not a Government iron with him. The contractor’s agent then paid the subcontractors for the animals which had passed inspection, and the deputy inspector, with the contractors’ agent, started the drove for Tipton, where they expected railroad transportation. On the way they, together with twenty-four horses and seventy-eight mules, were captured by the enemy.
From these facts wé conclude that the stock was duly inspected and accepted by an officer of the -United States, acting through a deputy; that is, acting according to the “practice or custom” then “in force in and observed by the quartermaster’s department at Saint Louis ” and therefore aud “ thereby,” that is, in accordance with this “ practice or custom,” they became “ the property of the United States.”
As this decision turns entirely upon the construction we give the private act, which in our opinion prescribes an exceptional standard by which the obligation of the Government to this contractor is to be.measured, that is, the “practice or custom,” we have not considered the points made by the defense, that there was no written contract in the case, and that the deputy inspector was not an officer who could bind the Government. The “practice or usage” was to dispense with written contracts; the “practice or usage” authorized the chief inspector to appoint deputies from time to time as occasion might arise; the “practice or usage” regarded the sale to the Government as complete when the animals had been *445 inspected and accepted by the deputy so appointed; and tbe observance of this “practice or usage” was a necessity in Missouri because of the military situation and the condition of the country at the time, and for that reason it was authorized, approved, and pursued by the Quartermaster’s Depart-anent when this “.claim originated.”
Judgment for plaintiff in the sum of $15,677.40.